# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| PAMELA OWEN,        ) | |
|         ) | |
|     Plaintiff,    ) | |
|         ) | |
| vs.        ) | CASE NO.: 5:06-CV-366-VEH |
|         ) | |
| THE CITY OF     ) | |
| DECATUR, ALABAMA,   ) | |
|         ) | |
|     Defendant.    ) | |

## MEMORANDUM OPINION

This matter comes before the court on Defendant's, the City of Decatur (hereinafter "Decatur"), Motion to Dismiss the Amended Complaint (doc. 28). This motion has been briefed extensively and is ripe for review. For the reasons stated herein, the Motion to Dismiss the Amended Complaint is **GRANTED IN PART** to the extent that Plaintiff's, Pamela Owen (hereinafter "Owen"), claims pursuant to 42 U.S.C.A. § 1983 are **DISMISSED WITH PREJUDICE** and **DENIED IN PART** as to Owen's claims pursuant to 42 U.S.C.A. § 2000e *et seq.* (Title VII).

### Rule 12(b)(6) Standard of Review

A court may dismiss a complaint under Rule 12(b)(6) only if it appears beyond a doubt that the Plaintiff can prove no set of facts in support of his claims which

1

would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002)(citing *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998)).

"[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003)(quoting *Marsh v. Butler County*, 268 F.3d 1014, 1036 n. 16 (11th Cir. 2001)). Furthermore, "[a] complaint may not be dismissed because the Plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)(emphasis in original)(citing *Robertson v. Johnston*, 376 F.2d 43 (5th Cir. 1967)). "The threshold of sufficiency that a complaint must meet to survive a Motion to Dismiss for failure to state a claim is . . . 'exceedingly low.'" *Ancata v. Prison Health Serv., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)(quoting *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev.*, 711 F.2d 989, 995 (11th Cir. 1983)).

## **Facts**[1]

Prior to the termination of her employment by the Mayor of the City of Decatur, Alabama, Owen was employed by Decatur in its Fire Department.[2] During the course of her employment she periodically served in the capacity of Acting Lieutenant.

On January 25, 2005, she applied for a position as a permanent Lieutenant after having successfully completed the written examination and all identified published requirements for the position. Owen was "verbally interviewed" for the Lieutenant position that same month at which time she stated that she "felt the interview process was biased against females" and refused to sign the interview forms. (Pl. Am. Compl., ¶ 10). In retaliation for her refusal to sign the interview forms, Owen was issued a disciplinary hearing notice, pending termination of her employment with Decatur.

A pre-disciplinary meeting was conducted on February 24, 2005, at which time Owen disclosed that she possessed a tape recording of the verbal job interview and that the recording refuted the basis of the disciplinary hearing. In March 2005, Owen was removed from the position of Acting Lieutenant by Battalion Chief Kenneth

---

[1] As it must, the court treats all facts in a light most favorable to Owen.

[2] The Mayor of the City of Decatur, Alabama, is not a party to this action.

Johnson pending the Mayor's decision on whether to terminate Owen's employment.[3] Owen asserts that her employment was thereafter terminated in June 2005. Owen was not provided with a reason for her termination.

## Analysis

**I.     As a matter of law, Owen's claim for deprivation of her substantive due process rights guaranteed by the Fourteenth Amendment to the United States Constitution does not constitute a maintainable claim under 42 U.S.C.A. § 1983.**

Decatur maintains that any rights relating to the employment of a public employee are state-created rights and, as such, do not give rise to a Fourteenth Amendment substantive due process claim. As a matter of law, a public employee may not assert a claim for substantive due process arising out of the conduct of a public employer. *See McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994) (en banc), *cert. denied*, 513 U.S. 1110 (1995). Owen concedes that her Fourteenth Amendment claim fits squarely within the *McKinney* framework and is therefore due to be dismissed.

**II.    As a matter of law, Owen's claim for violation of her right to free speech guaranteed by the First Amendment to the United States Constitution does not constitute a maintainable claim under 42 U.S.C.A. § 1983.**

The basis of Owen's claim is her allegation that, during the course of the interview process for the position of Fire Department Lieutenant, she was exercising

---

[3] Battalion Chief Kenneth Johnson is not a party to this action.

her constitutional right of free speech when protesting the job interview process as being biased against females. Owen contends that, as a result of what she maintains is protected speech, she was terminated from her employment.

### A.     Standard of Review

A public employee has "no right to object to conditions placed upon the terms of employment - including those which restricted the exercise of constitutional rights." *Garcetti v. Ceballos*, 126 S.Ct. 1951, 1957 (2006) (*quoting Connick v. Meyers*, 461 U.S. 138, 143, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). However, "[t]he Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti*, 126 S.Ct. at 1957. In certain instances, a public employee may speak, not as a public official during the course of his or her duty, but as a private citizen on matters of public concern. *Id.*

The Supreme Court, in *Pickering v. Board of Ed. of Tp. High School*, 391 U.S. 563, 88 S.Ct. 1731 (1968), and more recently in *Garcetti*, has articulated two inquiries regarding the proper interpretation of the constitutional protections accorded to public employee speech. "The first requires determining whether the employee spoke as a citizen on a matter of public concern." *Garcetti*, 126 S.Ct. at 1958 (*citing Pickering*, 391 U.S. at 568, 88 S.Ct. 1731). If the answer to this threshold inquiry is no, then a court's analysis ends. *Id.* (*citing Connick*, 461 U.S. at 147, 103 S.Ct.

1684). If the answer is yes, then the court must determine whether "the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Garcetti*, 126 S.Ct. at 1958 (*citing Pickering*, 391 U.S. at 568, 88 S.Ct. 1731). "The First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens." *Garcetti*, 126 S.Ct. at 1958 (*citing Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2964, 33 L.Ed.2d 570 (1972)).

While a government entity may not terminate the employment of "a public employee in retaliation for speech protected under the First Amendment, a public employee's right to freedom of speech is not absolute." *Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989), *citing Rankin v. McPherson*, 483 U.S. 378 (1987). In keeping with the *Pickering* analysis, the Eleventh Circuit has carved out a more detailed standard. "It is well established in this circuit that, for a public employee to establish a prima facie case of First Amendment retaliation, she must show: 1) that the speech can be fairly characterized as relating to a matter of public concern, 2) that her interests as a citizen outweigh the interests of the State as an employer, and 3) that the speech played a substantial or motivating role in the government's decision to take an adverse employment action." *Akins v. Fulton*

*County, Ga.*, 420 F.3d 1293, 1303 (11th Cir. 2005); *see also Bryson v. City of Waycross.* 888 F.2d 1562, 1565 (11th Cir. 1989), *citing Pickering v. Board of Ed. of Tp. High School*, 391 U.S. 563, 88 S.Ct. 1731 (1968).[4]

The threshold question of whether a public employee's speech may be fairly characterized as constituting speech on a matter of public concern is a question "of law, not of fact." *Maggio v. Sipple*, 211 F.3d 1346, 1351 (11th Cir. 2000). For speech to "involve a matter of public concern, a government employee's speech must relate to any matter of political, social or other concern to the community." *Maggio*, 211 F.3d at 1351-52 (internal marks and cites omitted). If "the government employee speaks not as a citizen on matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id*. at 1352 (internal marks omitted). A court must first "discern whether [plaintiff] spoke primarily as a citizen on behalf of the public or as an employee upon matters

---

[4]Once the court has performed this analysis, and a plaintiff has navigated the challenge successfully, it is shouldered upon the finder of fact to: (1) determine whether the employee's speech played a substantial part in the government's decision to demote or discharge the employee; and (2) if the employee prevails by showing that the speech was a substantial motivating factor in the state's employment decision, the state must prove by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct. *See Bryson*, 888 F.2d at 1565-66.

of personal interest." *Id.* If the court determines that the threshold test is not met, the inquiry ends. *Maggio*, 211 F.3d at 1354.

"[A] public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run." *Ferrara v. Mills*, 781 F.2d 1508, 1516 (11th Cir. 1986). "To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark – and certainly every criticism directed at a public official – would plant the seed of a constitutional case." *Connick*, 461 U.S. at 149. The Supreme Court has "sought both to promote the individual and societal interests that are served when employees speak as citizens on matters of public concern and to respect the needs of government employers attempting to perform their important public functions." *Garcetti*, 126 S.Ct. at 1959 (internal citations omitted). The First Amendment does not empower public employees to constitutionalize every employee grievance. *Connick*, 461 U.S. at 149.

> **B.    Owen's speech fails as "protected" under the threshold inquiry articulated in *Garcetti v. Ceballos*, 126 S.Ct. 1951, 1957 (2006), *Pickering v. Board of Ed. Of Tp. High School*, 391 U.S. 563, 88 S.Ct. 1731 (1968), and *Akins v. Fulton County, Ga.*, 420 F.3d 1293, 1303 (11th Cir. 2005).[5]**

---

[5]In *Garcetti*, the Supreme Court recently held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from

In the instant case, this court must first determine whether Owen spoke as a citizen on behalf of the public or as an employee in a desire to further her own personal interests. "An employee's speech will rarely be entirely private or entirely public [and the] main thrust of the employee's speech must be determined." *Maggio*, 211 F.3d at 1352, *quoting Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir. 1993) (internal marks omitted). The "main thrust" of a public employee's speech is yielded from an examination of "the content, form, and context of a given statement." *Connick v. Myers*, 461 U.S. 138, 147-48, 103 S.Ct. 1684, 1690 (1983); *Morgan*, 6 F.3d at 754.

This court is convinced that Owen's statement did not constitute speech on a matter of public concern. Owen does not allege any facts that could possibly give rise to her speech being protected by the First Amendment. The facts alleged in Owen's Complaint demonstrate that Owen stated, during a job interview, that she believed the "process was biased against females" and refused to sign the interview forms. In retaliation for her failure to sign the interview forms "upon the belief the [interview] process was biased against females," Owen was issued a disciplinary hearing notice pending termination of her employment. (Pl. Am. Compl., ¶ 10). Such a hearing never took place; however, during a pre-disciplinary meeting, Owen stated that she

---

employer discipline." *Garcetti*, 126 S.Ct at 1960. Because Owen's statement was made during a job promotion interview, it was not made during the course of her official duties, and the holding of *Garcetti* is inapplicable to the instant case.

possessed a "tape recording" of the job interview that "refutes the basis of the disciplinary hearing." (Pl. Am. Compl., ¶ 10). The following month, Owen was relieved of her duties as Acting Lieutenant. Owen was terminated from her employment with Decatur by the Mayor with no explanation on June 3, 2005.

Owen's statement has a far more private and informal flavor than the employee's speech at issue in *Morgan v. Ford*, 6 F.3d 750 (11th Cir. 1993). In that case, the plaintiff, Jacqueline Morgan, a correctional officer at the Augusta Correctional Medical Institute (ACMI): (1) served as a witness for a colleague who had pursued a sexual harassment complaint against Morgan's immediate supervisor, John Ford; (2) told the Superintendent of ACMI of Ford's harassing behavior toward her; (3) pressed charges against Ford with the Georgia Department of Corrections Internal Affairs Division; and (4) filed a sexual harassment charge against Ford with the Georgia Office of Fair Employment Practices. *Morgan,* 6 F.3d at 752-53. The Eleventh Circuit Court of Appeals sustained the district court's entry of summary judgment against Morgan on her § 1983 claim, finding that "the main thrust of her speech took the form of a private employee grievance." *Morgan,* 6 F.3d at 755.

Relying on *Morgan*, the Eleventh Circuit issued a complementary decision in *Watkins v. Bowden*, 105 F.3d 1344 (11th Cir. 1997). Watkins, a public employee, verbalized informal and private complaints regarding the manner in which she was

being treated by a coworker as well as her opinion that a speaker at a lunch she was required to attend was "offensive" in his comments. *Watkins*, 105 F.3d at 1353-54. Watkins asserted a First Amendment retaliatory discharge claim against her employer alleging that her termination was a direct result of her protected statements. On appeal, the court held that Watkins' private and informal complaints "certainly" did not rise to the level of speech regarding a matter of public concern. *Id.*

Owen's statement was not made in a public forum but was directed to an interview panel during a private proceeding. Following the court's reasoning in *Watkins*, Owen's private and informal complaint regarding the interview process does not constitute protected public speech.

Owen's speech was not uttered in her "role as a citizen" driven to eradicate gender discrimination from a municipality's job interview practice; rather, she spoke as an employee during her quest for professional advancement. *Kurtz v. Vickrey,* 855 F.2d 723, 727 (11th Cir.1988). Owen's statement "did not draw the public at large or its concerns into the picture." *Watkins v. Bowden*, 105 F.3d 1344, 1353 (11th Cir. 1997). The "main thrust" of her speech was to further private interests; specifically a job promotion. *Maggio*, 211 F.3d at 1352

Consequently, Owen has not satisfied the first prong necessary to establish that her statement is protected under the First Amendment; thus, this court's inquiry ends.

11

*See Maggio*, 211 F.3d at 1354. While the standard a nonmovant must meet to survive a motion filed pursuant to Fed. R. Civ. P. 12(b)(6) is "exceedingly low," as a matter of law, Owen "can prove no set of facts in support of [her] claims which would entitle [her] to relief" under a First Amendment retaliatory discharge claim. *Ancata*, 769 F.2d at 703; *Conley*, 355 U.S. at 45-46. As such, Owen's § 1983 claim for a violation of her rights guaranteed by the First Amendment is properly denied.

**III.   Owen has sufficiently plead her Title VII claims to survive Decatur's Motion to Dismiss.**

"The prima facie case under *McDonnell Douglas* ... is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 122 S.Ct. 992, 997 (2002). The requirements for establishing a prima facie case under *McDonnell Douglas* do not apply to the standard a plaintiff must satisfy in order to survive a motion to dismiss; particularly, the Supreme Court has specifically rejected the notion that a Title VII plaintiff must plead with particularity. *Swierkiewicz*, 534 U.S. at 511. "Consequently, the ordinary rules for asserting the sufficienct of a complaint apply." *Id*.

The court must consider Owen's Amended Complaint in light of Fed. R.Civ. P. 8(a)(2), which provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." *See*

12

*Swierkiewicz*, 534 U.S. at 512. Under Rule 8(a)(2), a plaintiff's complaint must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id*. (*quoting Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The court's obligation on a motion to dismiss is not to determine whether a plaintiff will ultimately prevail, but to determine whether, based on the pleadings, a plaintiff is entitled to offer evidence to support the claims. *See Swierkiewicz*, 534 U.S. at 511.

Owen's Amended Complaint expressly asserts a claim for gender discrimination and a separate claim for retaliation, both pursuant to Title VII.[6] Under the standard in *Swierkiewicz*, Owen has offered pleadings in her Amended Complaint sufficient to survive Decatur's Motion to Dismiss.

## **Conclusion**

A separate Order will be entered in accordance with this Memorandum Opinion.

---

[6] While vague in its construction, Owen's Amended Complaint hints at claims, pursuant to Title VII, for disparate treatment, failure to promote, retaliation, and pattern or practice discrimination in Decatur's promotion procedures. The court finds, pursuant to the lax standard articulated in *Swierkiewicz*, that Decatur has been put on notice of these possible claims.

**DONE** this 14th day of June, 2006.

                                          **VIRGINIA EMERSON HOPKINS**
                                          United States District Judge